**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **HENRY BARNES,** | |
| Plaintiff, | |
| v. | Civil Action No. 7:19-CV-92 (HL) |
| **CITY OF VALDOSTA, LESLIE MANAHAN, CARLA JONES, and MARK BURKHART**, | |
| Defendants. | |

**ORDER**

Plaintiff Henry Barnes filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 and state law claiming that Defendants are liable for violations of his constitutional rights following an interaction with Defendant Mark Burkart at a local nightclub. Presently pending before the Court is Defendants City of Valdosta, Leslie Manahan, Carla Jones, and Mark Burkhart's Motion for Summary Judgment. (Doc. 20). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Court concludes that there are no genuine issues of material fact as to any claim and **GRANTS** Defendants' motion for summary judgment.

## I.    FACTUAL BACKGROUND

Sometime late on the night of February 16 or early on the morning of February 17, 2019, Plaintiff was driving his Polaris Ranger all terrain vehicle

("ATV") on a public street across from the AmVets Post 607 ("AmVets") nightclub in Valdosta, Georgia. (Plaintiff Dep., p. 18-19). Plaintiff's music was loud. (Id. at p. 20; Burkhart Aff., ¶ 5). Defendant Mark Burkhart, an officer with the patrol division of the Valdosta Police Department, was working off-duty as a security guard at AmVets that evening. (Burkhart Aff., ¶ 4). Hearing the music, Burkhart shined a light in Plaintiff's direction as a warning "to turn the music down or leave or just a warning to get [Plaintiff's] attention." (Plaintiff Dep., p. 20). Prior to February 16, Plaintiff and Burkhart had discussed Plaintiff's use of the ATV near the nightclub. (Id. at p. 20, 23).

Plaintiff headed home on the ATV. (Id. at p. 21). He later returned to the nightclub in his personal vehicle. (Id.). As Plaintiff approached the entrance to the club, Burkhart verbally addressed him, cautioning Plaintiff that he could issue Plaintiff a ticket in relation to his use of the ATV. (Id. at p. 21, 26; Burkhart Aff., ¶ 6). Burkhart "went on and on about it," and Plaintiff "sort of got mad." (Plaintiff Dep., p. 21). Plaintiff remarked, "If you're going to give me a ticket, you should have gave me a ticket when I was on the ATV." (Id. at p. 21-22). He told Burkhart he felt harassed. (Id. at p. 22). According to Plaintiff, that is when "things got heated up." (Id.).

During their interaction, Plaintiff and Burkhart stood a foot or less apart. (Id.). Burkhart alleges, and Plaintiff denies, that Plaintiff advanced toward

Burkhart with his fingers pointed toward Burkhart's chest. (Burkhart Aff., ¶ 7). Burkhart slapped Plaintiff's hand away. (Plaintiff Dep., p. 22; Burkhart Aff., ¶ 8; Doc. 20-3, p. 6). Plaintiff testified that the contact happened fast. (Plaintiff Dep., p. 22, 27). Defendant Carla Jones, another off-duty officer working security, was nearby. (Id. at p. 27).

Plaintiff declared, "I can't believe you struck me." (Id. at p. 28). He then left in his vehicle. (Id. at p. 24, 28). At no point did Burkhart place Plaintiff in handcuffs, nor did he arrest Plaintiff. (Plaintiff Dep., p. 23, 28; Burhart Aff., ¶¶ 9-10). Burkhart also never told Plaintiff that he was being detained or that he was not free to leave. (Id. at p. 23-25, 50; Burkhart Aff., ¶¶ 9-10).

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (quotation omitted). If the movant meets this burden, the burden

shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.    DISCUSSION

Plaintiff asserts claims against Defendants under federal and state law for unreasonable search and seizure, unlawful detention, excessive force, failure to intervene, failure to train and supervise, indemnification, assault and battery, and negligent infliction of emotional distress. Defendants Burkhart and Jones argue that they are entitled to qualified immunity because Plaintiff has not presented evidence of a deprivation of his constitutional rights. Defendants Manahan and the City of Valdosta contend that summary judgment is proper as to Plaintiff's failure to train and supervise claims because Plaintiff has not demonstrated that any conduct by these Defendants resulted in a violation of Plaintiff's constitutional rights. In the absence of a constitutional violation, Defendants urge

4

the Court not to exercise its pendant or supplemental jurisdiction over Plaintiff's state law claims.

**A.    Plaintiff's Federal Law Claims**

**1.    Qualified Immunity**

Defendant Burkhart argues that he is entitled to qualified immunity as to Plaintiff's claims that he unlawfully detained Plaintiff and subjected him to excessive use of force. Defendant Jones contends that she, too, is protected by qualified immunity because there is no evidence that she failed to intervene to prevent any unlawful use of force by Burkhart. The Court finds that Plaintiff has failed to present evidence sufficient to establish any constitutional violation. Burkhart and Jones therefore are entitled to qualified immunity.

**a.    General Principles**

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they

5

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quotation omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Burkhart and Jones were acting within the scope of their discretionary authority during their interaction with Plaintiff.[1] Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is _not_

---

[1] Neither party addressed whether Burkhart and Jones, who were off-duty at the time of their encounter with Plaintiff, were acting within the scope of their discretionary authority as officers employed by the City of Valdosta Police Department. The officers may be considered state actors to establish § 1983 individual liability only if their actions related to the performance of their police duties and were carried out pursuant to authority conferred by the state. See West v. Atkins, 487 U.S. 42, 49-50 (1998) ("[A] defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State . . . [either] while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Here, Burkhart and Jones were providing security at AmVets on the night of the events alleged in Plaintiff's Complaint. (Burkhart Aff., ¶¶ 4, 6). However, Plaintiff was familiar with Burkhart in his role as a police officer. (Plaintiff Dep., p. 21). The nature of Burkhart's interaction with Plaintiff regarding the use of his ATV along with Plaintiff's testimony that Burkhart threatened to issue him a ticket lend to the conclusion that the officers were acting under color of law. (Id. at p. 21, 26).

entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

### b. Search and Seizure

Plaintiff alleges that Burkhart unlawfully detained him in violation of his constitutional rights. However, the undisputed evidence shows that the encounter was consensual and does not rise to the level of a "seizure" under the Fourth Amendment. Plaintiff additionally has not demonstrated that Burkhart's conduct would "shock the conscious" and give rise to a Fourteenth Amendment due process violation. Plaintiff's claim therefore fails as a matter of law.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quotation omitted). To succeed in a § 1983 action, a plaintiff first must "identify the exact contours of the underlying right said to have been violated." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). In this case, whether Plaintiff has presented sufficient evidence of a constitutional violation to avoid summary judgment requires an initial

determination of whether the circumstances presented implicate either the Fourth Amendment's protections against unreasonable seizures or the Fourteenth Amendment's due process protections. <u>See</u> <u>Thomas v. City of Columbus</u>, 198 F. Supp. 2d 1360, 1365 (M.D. Ga. 2002).

"The Fourth Amendment protects individuals from unreasonable search and seizure." <u>United States v. Chanthasouxat</u>, 342 F.3d 1271, 1275 (11th Cir. 2003); U.S. Const., amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." <u>Terry v. Ohio</u>, 392 U.S. 1, 8-9 (1968) (concluding that the petitioner "[u]nquestionably . . . was entitled to the protection of the Fourth Amendment as he walked down the street"). However, a "'seizure' does not occur every time a police officer interacts with a citizen." <u>United States v. Knights</u>, 989 F.3d 1281, 1286 (11th Cir. 2021). "Officers are free to approach[ ] individuals on the street or in other public places and put[ ] questions to them if they are willing to listen." <u>Id.</u> (internal quotation marks and citation omitted); <u>see also</u> <u>United States v. Franklin</u>, 323 F.3d 1298, 1301 (11th Cir. 2003) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.") (quotation omitted). "The person approached . . . need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." <u>Florida v. Royer</u>,

460 U.S. 491, 498 (1983). Such a consensual encounter does not implicate the Fourth Amendment. United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

Whether or not an encounter is consensual depends on the totality of the circumstances. Jordan, 635 F.3d at 1186. "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." Id. (quotation omitted). But, if "the citizen's cooperation is induced by 'coercive means' or if a reasonable person would not 'feel free to end the encounter,' . . . then the encounter is no longer consensual, a seizure has occurred, and the citizen's Fourth Amendment rights are implicated." Id. (citing United States v. Drayton, 536 U.S. 194, 201 (2002)).

When determining whether an encounter between a citizen and an officer was consensual and whether a seizure has occurred, the court should consider the following factors:

> whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

United States v. Perez, 443 F.3d 772, 778 (11th Cir. 2006) (quotation omitted).

9

No seizure occurred in this case. Plaintiff testified that as he approached the entrance to AmVets, Burkhart "just went to talking" to him. (Plaintiff Dep., p. 26). Burkhart "went to telling [Plaintiff] about the ATV and what tickets" he could issue Plaintiff. (Id.). There is no evidence that the conversation was coercive. Plaintiff admits that Burkhart never indicated that Plaintiff could not leave and never arrested Plaintiff. (Id. at p. 24-25, 28). Plaintiff further admits that he left the nightclub on his own accord. (Id. at p. 28). Based on the totality of the circumstances, there is no evidence from which a reasonable jury could find that the encounter between Plaintiff and Burkart was anything but consensual. Accordingly, the Fourth Amendment is not implicated.

The Court next must analyze whether Plaintiff has set forth a Fourteenth Amendment substantive due process claim. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The intent of the Due Process Clause is to prevent government officials from abusing their power and to protect individuals from arbitrary government action. Lewis, 523 U.S. at 845-46. "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). "[A]reas in which substantive rights are created only by state law (as is the case with tort law . . .) are not

subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution." McKinney v. Pate, 30 F.3d 1550, 1556 (11th Cir. 1994) (quotation omitted). Thus, the Fourteenth Amendment "must not be used through [S]ection 1983 as a 'font of tort law' to convert state tort claims into federal causes of action." Waddell v. Hendry Cnty. Sheriff's Off., 329 F.2d 1300, 1305 (11th Cir. 2003) (citation omitted). Conduct by a state actor "that would amount to an intentional tort under state law" rises to the level of a substantive due process violation "if it 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).

Plaintiff here alleges that Burkart committed an intentional battery when he struck Plaintiff's hand—a tort under Georgia law. Plaintiff's "right to be free from such a battery is conferred by Georgia law and protected by the Georgia courts." Id. Plaintiff has not otherwise presented evidence from which a reasonable jury could conclude that Burkhart's conduct "shocks the conscience." Nor has Plaintiff pointed to any authority establishing that he suffered a constitutional deprivation rather than a state law tort. See Skinner v. City of Miami, Fla., 62 F.3d 344, 348 (1995). Consequently, Plaintiff is not entitled to relief under § 1983, and summary judgment is appropriate.

11

c.    **Excessive Force**

Plaintiff alleges that Burkhart accosted him outside the AmVets nightclub "in a hostile and belligerent manner" and that Burkhart slapped his hand "with the use of force that cause[d] intentional touching where no physical threat of injury was imposed." (Doc. 1, p. 5; Plaintiff Dep., p. 22, 27). Plaintiff claims that his arm was "a little sore" for a "[c]ouple of days." (Plaintiff Dep., p. 29).

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses "the right to be free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quotation omitted); see also U.S. Const. amend. IV. To establish an excessive force claim, a plaintiff first must show that he was "seized" within the meaning of the Fourth Amendment. See Vaughan v. Cox, 343 F.3d 1323, 1328 (11th Cir. 2003). A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement *through means intentionally applied*." Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989) (emphasis in original).

As discussed above, no seizure occurred in this case. However, even if Plaintiff could show that his interaction with Burkhart amounted to a seizure, Plaintiff has not demonstrated that Burkhart's conduct was unreasonable under the circumstances. When a seizure occurs, the court next must decide whether

12

the force applied to effectuate the seizure was reasonable. A seizure "alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" Id. at 599. The relevant inquiry is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kessinger ex rel. Estate of Kessinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (citing Graham v. Conner, 490 U.S. 386, 397 (1989)). "[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment.). "Qualified immunity applies unless application of the standard would inevitably lead a reasonable officer in the defendant's position to conclude that the force was unlawful." Gold v. City of Miami (Gold I), 121 F.3d 1442, 1446 (11th Cir. 1997) (internal quotation marks and citation omitted).

Taking the evidence in the light most favorable to Plaintiff and assuming that Plaintiff did not approach Burkhart with his fingers pointed toward Burkhart's chest, Burkart's swatting of Plaintiff's hand, even if not necessary, was a de minimus use of force. "[T]he application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."

13

Nolin, 207 F.3d at 1257. Burkhart is therefore entitled to qualified immunity, and summary judgment is proper.

### d.    Failure to Intervene

Plaintiff alleges that Defendant Carla Jones failed to intervene and prevent Burkhart from striking him. A law enforcement officer may be held liable under § 1983 for failing to intervene when another officer is committing a constitutional violation. Ensley v. Soper, 142 F.2d 1402, 1407 (11th Cir. 1998). However, liability only arises when the officer is in a "position to intervene yet failed to do so." Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008). The evidence here demonstrates that Jones had no opportunity to intervene. By Plaintiff's own testimony, the events "happened so fast." (Plaintiff Dep., p. 25). Jones accordingly is entitled to qualified immunity.

### 2.    Failure to Train or Supervise

### a.    Plaintiff's Claims against Defendant Leslie Manahan

Defendant Leslie Manahan is the Chief of Police for the City of Valdosta. Plaintiff does not allege that Manahan had any personal involvement in the February 17, 2019 incident. Plaintiff alleges only that Manahan, "had knowledge of . . . [her] subordinates['] violations" and that she "knowingly and intentionally[ ] failed to supervise her subordinate[s]." (Doc. 1, p. 4).

14

"[S]upervisors cannot be held liable for the acts of employees solely on the basis of respondeat superior." <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1443 (11th Cir. 1985) (citing <u>McLaughlin v. City of LaGrange</u>, 662 F.2d 1385, 1388 (11th Cir. 1981)). "[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officer comes into contact." <u>Keith v. DeKalb Cnty., Ga.</u>, 749 F.3d 1034, 1052 (11th Cir. 2014) (internal quotation marks, alteration, and citation omitted). To establish a claim that a supervisor violated a plaintiff's constitutional rights by failing to train and supervise subordinates, a plaintiff "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." <u>Id.</u> (quoting <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1360 (2011)). "There must be a causal connection between the actions of the supervisory official and the alleged deprivation." <u>Fundiller</u>, 777 F.2d at 1443 (citations omitted). "This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action." <u>Id.</u>

15

Plaintiff has failed to show that his constitutional rights were violated during his encounter with Defendants Burkart and Jones. Even assuming Plaintiff established a violation of his rights, Plaintiff has not produced evidence that the constitutional violation resulted from a lack of adequate training or Manahan's deliberate indifference to those rights. The Court accordingly **GRANTS** summary judgment as to Plaintiff's claims against Defendant Manahan.

b.      **Plaintiff's Claims against Defendant City of Valdosta**

Plaintiff also claims that the City of Valdosta is responsible for the alleged constitutional violations. The law is well-established that a municipality cannot be held liable for a § 1983 violation premised on a respondeat superior theory of liability; rather, the municipality must itself cause the constitutional violation. Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)). "A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1293 (11th Cir. 2009). "[I]t is generally necessary to show a persistent and wide-spread practice" to support the existence of a policy or custom. Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986).

A municipal policy or custom may include a failure to provide adequate training provided the deficiency "evidences a deliberate indifference to the rights

of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 388 (1989). A city "is not automatically liable under [§] 1983 even if it inadequately trained or supervised its police officers and those officers violated [a plaintiff's] constitutional rights. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). An allegation of a failure to train or supervise can be the basis for liability under § 1983 only in the "limited circumstance" where "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." Id. (citing City of Canton, 489 U.S. at 387 ("[M]unicipal liability under § 1983 attaches . . . [o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases.") (internal quotation marks omitted)). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." Id. at 1351.

As previously discussed, Plaintiff has failed to establish a violation of his constitutional rights. And, even if he could produce evidence of a violation, Plaintiff has not shown that the City of Valdosta maintains a policy or custom that caused a constitutional violation and injury. The City of Valdosta therefore cannot be held liable under § 1983.

17

### 3.    Official Capacity Claims

Plaintiff's Complaint does not specify whether his claims against Defendants Burkhart, Jones, and Manahan are in their individual or official capacities. To the extent that Plaintiff intends to pursue his § 1983 claims against these Defendants in their official capacities, those claims must be dismissed. A § 1983 lawsuit against a government official in his official capacity is considered a suit against the governmental entity he represents. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309 (11th Cir. 2009) (citation omitted). Burkhart, Jones, and Manahan are employed as officers with the City of Valdosta Police Department. Thus, Plaintiff's suit against these Defendants in their official capacities is the equivalent of suing the City of Valdosta, which is already named as a defendant in the case. The official capacity claims therefore are **DISMISSED** as redundant.

### B.    Plaintiff's State Law Claims

Defendants move the Court not to exercise jurisdiction over Plaintiff's remaining state law claims. "[D]istrict courts shall have original jurisdiction of all civil actions arising under . . . laws . . . of the United States." 28 U.S.C. § 1331. Supplemental jurisdiction permits a court to hear a plaintiff's state law claims when they arise out of the same common nucleus of operative facts as the plaintiff's federal law claims. 28 U.S.C. § 1367(a); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). However, the Supreme

18

Court has "cautioned courts against" exercising supplemental jurisdiction "in every case in which it is found to exist." Ameritox, Ltd. v. Millenium Lab'ys, Inc., 803 F.3d 518, 530 (11th Cir. 2015) (internal quotation marks omitted). Rather, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

Section 1367(c) lists four situations where a district court may decline to exercise supplemental jurisdiction over state law claims:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Having granted summary judgment in favor of Defendants as to all of Plaintiff's federal law claims, the Court declines to exercise pendant or supplemental jurisdiction over Plaintiff's state law claims under § 1367(c)(3). Accordingly, Plaintiff's state law claims are dismissed without prejudice.[2]

---

[2] Even if the Court were to exercise its supplemental jurisdiction over Plaintiff's state law claims, those claims would be subject to dismissal because Defendants are entitled to official immunity. The doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity." Cameron v. Lang, 274 Ga. 122, 123 (2001). A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or

**VI.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 20).

**SO ORDERED**, this the 9th day of April, 2021.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks

---

her authority, and the official has not acted in a willful or wanton manner; with actual malice; or with the actual intent to cause injury." Brown v. Penland Constr. Co., 281 Ga. 625, 625-26 (2007); see also Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d).